**In re David Louis COOPER.**

No. 09–01–122 CV.

Court of Appeals of Texas, Beaumont.

Submitted April 26, 2001.

Decided May 31, 2001.

As Corrected June 1, 2001.

---

Joe Michael Dodson, Pate & Dodson, Beaumont, for relator.

Clint W. Lewis, Lewis & Associates, Beaumont, Bob K. Monk, McPherson, Monk, Hughes, Bradley & Wimberley, L.L.P., Port Arthur, for real parties in interest.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

BURGESS, Justice.

We consider whether the trial court abused its discretion in denying a motion for protection, which was sought to prevent disclosure of communications asserted to be protected by David Louis Cooper's attorney-client privilege. The trial court found Cooper waived the privilege when he executed an assignment of his claims against his insurers. We conclude the trial court abused its discretion in finding Cooper waived his privilege and ordering Cooper's attorneys to produce their file materials from his previous lawsuit, thereby requiring disclosure of privileged communication. Because Cooper has no adequate remedy at law, we conditionally grant the writ of mandamus.

After Harold Joseph obtained a judgment in an automobile personal injury suit against Cooper in excess of his insurance policy limits, Cooper assigned his claims against his insurers (Allstate Insurance Company and Allstate County Mutual Insurance Company ("Allstate")) to Joseph. Joseph then filed a "Stowers" case against Allstate, and that suit is the underlying

cause in which Cooper seeks a writ of mandamus.

Mandamus will issue only to correct a clear abuse of discretion or to correct the violation of a duty imposed by law when there is no other adequate remedy by law. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992)(orig.proceeding). However, appellate review affords limited deference to the trial court if the mandamus proceedings arise from the interpretation of legal rules. *Granada Corp. v. First Court of Appeals,* 844 S.W.2d 223, 225 (Tex.1992)(orig.proceeding)(citing *Walker v. Packer,* 827 S.W.2d at 840).

Here, the trial court found Cooper waived his attorney-client privileges by executing the following assignment:

> I, the undersigned, David Louis Cooper . . ., hereby assign, grant, and convey all rights, title and interest in and to any causes of action that I may have against Allstate Insurance Company, Allstate County Mutual Insurance Company, their agents, employees, and servants, arising out of, or by virtue of, my insurance policy or policies, or claims made by HAROLD JOSEPH AND MARY JOSEPH . . . against me, including but not limited to, any causes of action I may have pursuant to the Stower's Doctrine, Texas Insurance Code, breach of contract, or any other common law fraud, misrepresentation, or other cause of action.

In so finding, the trial court was required to interpret legal rules, i.e., Texas Rules of Evidence 503 and 511.

As noted by the Texas Supreme Court, the attorney-client privilege found in Rule of Evidence 503 facilitates free and open communication between attorney and client, and assures that the communication will remain confidential in order to promote effective legal services, which "in turn promotes the broader societal interest of the effective administration of justice." *Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 160 (Tex.1993). Under Rule 503, the privilege applies unless certain exceptions exist. For example, the privilege does not apply if the services of an attorney were sought in furtherance of a crime or fraud. Tex.R. Evid. 503(d). Here, the trial court did not find a Rule 503(d) exception existed and neither party so contends. The privilege, moreover, may be waived through voluntary disclosure or consent to disclosure under Evidence Rule 511[1]. Apparently determining Cooper's execution of the assignment to be such a voluntary disclosure or consent to disclosure, the trial court stated:

> Well, let me say this: It makes no sense to me to say that you can assign a Stowers claim without waiving the privilege because if that's not part and parcel of the deal, then you don't have an effective assignment.
>
> . . . .
>
> And the Court's ruling is . . . that the . . . attorney/client privilege is waived-

---

1. **Rule 511. Waiver of Privilege By Voluntary Disclosure**

A person upon whom these rules confer a privilege against disclosure waives the privilege if:

(1) the person or a predecessor of the person while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged; or

(2) the person or a representative of the person calls a person to whom privileged communications have been made to testify as to the person's character or character trait insofar as such communications are relevant to such character or character trait.
Tex R. Evid. 511.

slash-assigned as an integral and fundamental part of the assignment of the Stowers claim, ... the rationale of the Stowers claim being the claim that Allstate breached its duty to ... Mr. Cooper ... by failing to—to take proper steps to secure the resolution of the case within the policy limits.

However, the assignment's language does not provide for Cooper to waive or assign any right he had to assert his attorney-client privilege.[2] It does not provide for him to voluntarily disclose or consent to disclosure of any significant part of the matters protected by his attorney-client privilege. Nor does it even provide for Cooper to cooperate as to matters giving rise to his claims against his insurers. In addition, Joseph's attorney testified that Allstate had already rejected the Stowers demand before he began discussions with Cooper's attorneys. He had been dealing directly with Allstate. Under these circumstances, we find that the trial court abused its discretion in finding Cooper's assignment to be a waiver of his attorney-client privilege against disclosure.

■ Joseph further argues Cooper's privilege was waived when his attorneys disclosed file materials to Allstate's defense attorneys in the Stowers action. The record, however, does not support Joseph's waiver contention. At the hearing on the motion for protection, Cooper's attorney stated Allstate's attorneys had received copies of communications to Cooper that also had been copied to Allstate, but that copies of communications individually with Cooper had been redacted. In his statement of facts, Joseph says Cooper's attorneys' Objections to Subpoena Duces Tecum reveal their file had been provided to Allstate's attorneys. However, a complete reading of the objections also shows Cooper's attorneys stated the file provided to the Allstate attorneys had been redacted to protect confidential communications privileged from disclosure by the attorney-client privilege. Here, the record does not show that any significant portion of the privileged materials were disclosed. *See Berger v. Lang*, 976 S.W.2d 833, 837 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Thus, Cooper's attorney-client privilege was not waived.

■ Even if trial court abused its discretion, mandamus will issue only if there is no other adequate remedy by law. *See Walker*, 827 S.W.2d at 840. And here, there is not. As the Texas Supreme Court stated:

[A] party will not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error. This occurs when the trial court erroneously orders the disclosure of privileged information which will materially affect the rights of the aggrieved party, such as documents covered by the attorney-client privilege.... As we noted in *Crane* [ *v. Tunks*, 160 Tex. 182, 190, 328 S.W.2d 434, 439 (1959) ]: "After the [privileged documents] had been inspected, examined and reproduced ... a holding that the court had erroneously issued the order would be of small comfort to relators in protecting their papers."

*Walker*, 827 S.W.2d at 843 (some citations omitted).

Therefore, we conditionally grant the writ and direct the trial court judge to modify his order in accordance with this opinion. The writ will issue only should he fail to do so.

WRIT CONDITIONALLY GRANTED.

GAULTNEY, Justice, concurring.

I concur with the Court's holding. The petition must be granted. I write sepa-

2. Certainly assignments could and, perhaps, should include such a waiver.

rately because of my concern over the effect the ability to assign a *Stowers* claim has on the relationship which exists between insured, insurance carrier and the attorney hired by the carrier to represent the interest of the insured. Because I believe assignments of the insured's claims against the carrier are void as a matter of public policy, I concur with the granting of the mandamus and the Court's order that discovery of attorney-client privileged information be halted in this case. *See generally State Farm Fire and Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex.1996).

The relationship between insured, carrier and attorney has been described as a tripartite relationship, a term suggestive of an uneasy alliance. *See State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 633 (Tex.1998) (Gonzalez, J., concurring in part and dissenting in part in which Abbott, J., joined). The attorney often is faced with competing ethical concerns, created by law which imposes on her an absolute loyalty to the insured and yet subjects her to controls imposed by the carrier. Numerous authors have expressed their opinions on how attorneys should handle many diverse questions arising out of this tripartite relationship, particularly when the attorney is presented with conflicting interests between the insured and the carrier. *See, e.g.*, Robert B. Gilbreath, *Caught in a Crossfire Preventing and Handling Conflicts of Interest: Guidelines for Texas Insurance Defense Counsel*, 27 TEX. TECH. L.REV. 139 (1996); Douglas R. Richmond, *Walking a Tightrope: The Tripartite Relationship Between Insurer and Insured, and Insurance Defense Counsel*, 73 NEB. L.REV. 265 (1994); Charles Silver, *Does Insurance Defense Counsel Represent the Company or the Insured?*, 72 TEX. L.REV. 1583 (1994). The competing issues involved in the attorney's representation are explained in detail in the literature cited, and I need not reiterate the issues. I simply point out that the tripartite relationship is inherently an uneasy alliance in cases where the insured lacks adequate insurance coverage.

Here, the attorney fulfilled her ethical duty to the insured. She prepared and delivered an assignment of his claims against the insurance carrier to the party that had sued the insured. She maintained a separate file for correspondence exchanged solely with the insured. As a reward for her diligence, she now is asked to provide deposition testimony in a lawsuit against the carrier.

My concern goes beyond the current dispute. In future *Stowers* cases, even if the client objects, the client will be pressured to include a waiver of the attorney-client privilege in the assignment of the *Stowers* claim. This will occur because the opposing attorney will insist on the waiver before the judgment creditor will accept the assignment; economic pressure will force the disclosure of information that should be understood to be highly confidential when exchanged between the client and his attorney. Every claim which involves a minimal insurance policy, or which involves the potential for an excess judgment, will be at high risk of disclosure of attorney-client privileged information. What effect will this have on the willingness and ability of a client to communicate with his counsel? How will you handle yourself if everything you say to your lawyer will be subject to disclosure to a party that has sued you, and therefore to someone who has a varying degree of hostility to you? To say the effect is destructive of the attorney-client relationship is too mild. Instead of informing the client of the privileged nature of the communications, the attorney will likely start out the relationship by advising the client that whatever is shared with the attorney may later be

required to be disclosed. I believe permitting the assignment will "imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client." *See Zuniga v. Groce, Locke & Hebdon,* 878 S.W.2d 313, 316, n. 4 (Tex. App.—San Antonio 1994, writ ref'd) (*quoting Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d, 389, 397, 133 Cal.Rptr. 83 (1976)). For this reason, the assignment of the insured's claims should be held void as a matter of public policy.

The insured would still have a *Stowers* claim against the carrier, and would still be under economic pressure to pursue the claim. What he will not be under economic pressure to do is waive the attorney-client privilege and permit disclosure of confidential information to the opposing party. The attorney-client relationship will not be further imperiled beyond the pressures currently inherent in the tripartite relationship.

I concur in granting the petition for mandamus because I believe the assignment is void as a matter of public policy, whether or not there is an express waiver of the attorney-client privilege in the assignment.